City of Minneapolis

# 7-800 Tactical Response

### 7-801 BARRICADED SUSPECTS, SNIPERS AND HOSTAGE SITUATIONS

The primary concern in all tactical situations is the protection of human life. Whenever possible, efforts will be directed towards peaceful negotiation rather than violent assault.

Barricaded suspects, snipers and hostage situations require a tactical plan. The primary responsibility of responding officers is to clear the area of bystanders and seal avenues of escape. The supervisor at the scene shall notify the on-duty Watch Commander, who may call an Operation 100. If the Watch Commander is not available, an on-scene supervisor may call an Operation 100. (11/07/01)

### 7-802 PROCEDURES FOR OPERATION 100 (11/08/01)

Officers confronting a sniper, armed, barricaded person or hostage situation shall first provide for their own safety and the safety of others. If the situation has turned into an active shooter scenario, responding personnel shall act in accordance with the Active Shooter policy. (11/08/01)

The on-duty Watch Commander, or in his/her absence, the on-scene supervisor, will assess the situation and determine if an Operation 100 is necessary. If it is determined that an Operation 100 is necessary, the Watch Commander or on-scene supervisor shall notify MECC of the situation and request other officers be dispatched to the scene to contain the threat, maintain observation and prevent escape. The primary responsibility of officers dispatched to the incident is to secure the area. During weekday evening hours, weekends and holidays, the Watch Commander or his/her designee shall notify the Chief, appropriate Deputy Chief and precinct commander. During weekday business hours, MECC shall notify the Chief, appropriate Deputy Chief and precinct commander. (11/08/01)

The on-duty Watch Commander or on-scene supervisor shall determine if the Special Weapons and Tactics Unit (SWAT) should respond. If so, the Watch Commander or on-scene supervisor shall: (11/08/01) (11/06/07)

- Notify MECC that an "Operation 100" is in effect;

- Designate a SWAT Field Command Post area

When selecting the SWAT Field Command Post area, the area should be:

- Out of sight of the perpetrator

- Close enough to be practical

- Upwind from the incident site

- Large enough to accommodate a minimum of 20 vehicles, including vehicles such as Mobile Command One, SWAT Negotiators van, SWAT Equipment van, the Bomb Squad truck and TCV.

REMEMBER: When selecting a SWAT Field Command Post area it is best to select a larger area than may be needed and scale it back, rather than an area which is too small. (11/06/07)

The SWAT supervisor, upon arrival at the scene, will assume command with complete authority and responsibility of the tactical operation. (11/06/07)


EXHIBIT 42

Overall incident command is the responsibility of the on-duty Watch Commander or non-SWAT supervisor. Incident command responsibility may include managing the media, perimeter, crowd control, non-SWAT logistics and equipment needs. (11/08/01) (11/06/07)

The on-duty Watch Commander shall report to the incident staging area and assist at the command post with expediting and coordinating assistance from within the MPD and other public and/or private agencies. The Watch Commander will continue to have citywide responsibilities and authority.

Tactical decisions in Operation 100's shall be made by a member of SWAT. Watch Commanders may assume tactical command only if they are a SWAT supervisor or circumstances necessitate removing tactical command from the SWAT supervisor. Reasons for removing tactical command from a SWAT supervisor shall be documented to the Chief of Police. (11/06/07)

### 7-802.01 DESIGNATING A SWAT FIELD COMMAND POST (11/06/07)

It is the responsibility of the SWAT supervisor or the Mobile Command One supervisor (whoever arrives first), or their designee, to coordinate with the Patrol Supervisor the location of the SWAT Field Command Post area.

The SWAT Field Command Post area should be large enough to accommodate parking for 20 vehicles (including large specialty vehicles such as Mobile Command One, SWAT Negotiators van, SWAT Equipment van, the Bomb Squad truck and TCV) as well as a separate area large enough to accommodate the staging and deployment of 50 SWAT personnel within that secured area.

These areas shall be cordoned off and secured with green Tactical Staging Area scene tape and blue Command Post scene tape. The Tactical Command Post Area will have a designated point of entry to the tactical area. All tactical and Bomb Squad personnel shall enter and exit the scene at the designated point of entry, sign in with logistics, and wait for assignment within the confines of the Tactical Staging Area, designated with the green Staging Area scene tape.

Police personnel not assigned in some capacity to SWAT (Command, Tactical, Negotiations, or Mobile Command One) or Bomb Squad shall not enter the Command Post area or Mobile Command One without receiving entry from the Tactical Commander or their designee.

Blue Command Post Scene Tape:

Mobile Command One personnel will maintain rolls of blue Command Post scene tape. The blue tape will be placed around the designated area around the Tactical Command Post portion(s) of the scene that will accommodate Mobile Command One and the SWAT Negotiators vehicle. Only SWAT and Bomb Squad personnel will be allowed to cross the blue tape. Blue tape usage will be at the discretion of SWAT Command Staff or Mobile Command One personnel. Once the Operation 100 is complete, Mobile Command One personnel will remove the blue tape.

Green Tactical Staging Area Scene Tape:

Mobile Command One personnel will maintain rolls of green Staging Area scene tape. The green tape will be placed around the designated Tactical Staging Area within the Tactical Command Post portion(s) of the scene. The Staging Area should be large enough to accommodate the staging and deployment of 50 SWAT and Bomb Squad personnel. Only SWAT and Bomb Squad personnel shall be allowed to cross the green tape. Green tape usage will be at the discretion of SWAT Command Staff or Mobile Command One personnel. Once the Operation 100 is complete, Mobile Command One personnel will remove the green tape.

### 7-803 BOMB THREATS (12/01/08)

(B-D)

Officers responding to a bomb threat shall advise the person in-charge (contact person) of the involved business or building, that it is their decision to evacuate. If asked for a recommendation, officers shall advise that in all instances

of bomb threats the Minneapolis Police Department recommends an evacuation of the building, and a search of the building by employees/staff (on a voluntary basis) to look for suspicious item(s).

Prior to the search being conducted officers shall also advise the contact person:

1. Not to use portable radios or cell phones while conducting the search;

2. Not to handle any suspicious item(s);

3. If a suspicious item is discovered immediately evacuate the area and call 911.

All requests for building searches utilizing MPD employees and/or canines to look for suspicious packages or suspected explosives must be approved by the Bomb Squad supervisor, in advance.

Responding officers shall complete a CAPRS report. Bomb threats should be coded BOMBT. If a suspicious package or suspected explosive is discovered subsequent to the bomb threat, CAPRS code BOMB shall be used in addition to BOMBT.

### 7-804 SUSPICIOUS PACKAGES, EXPLOSIVES, SUSPECTED EXPLOSIVE PACKAGES AND EXPLOSIONS (12/01/08)

(B-D)

Sworn personnel should be aware of the potential for secondary devices and other potential hazards when responding to any scene involving a:

- Suspicious package

- Suspected explosive

- Suspected explosive package or device

- Suspected weapon of mass destruction (WMD)

- Chemical bomb

- Military ordnance

- Clandestine lab

- Explosion

Sworn personnel shall not handle or open any device, or utilize a canine to survey any suspicious package. Responding officers shall establish a perimeter and evacuate all persons (including EMS personnel) to a minimum distance of 500 feet. Portable radios and cell phones shall not be used in the immediate vicinity of the suspected threat. Only personnel assigned to the Bomb Squad shall cross the established perimeter.

Officers shall complete a CAPRS report coded BOMB.

### 7-805 CIVIL DISTURBANCES (04/20/01)

(B-C)

MPD personnel will not interfere with lawful protests and/or demonstrations. Unless a crime has been committed, officers are responsible only for keeping the peace at civil disturbances. If a citizen's arrest is made, officers are required to accept the prisoner unless it appears that the arrest is unlawful.

Officers responding to large-scale disturbances, or those that are likely to become violent, shall notify their supervisor. The responding supervisor shall assume incident command and determine the need for additional assistance, equipment, and tactics to be used. The responding supervisor will inform the Watch Commander, who shall contact MECC with information of the situation. MECC shall contact the Chief of Police and the appropriate Bureau Head, with information of the situation.

The first level of additional assistance shall be precinct officers and designated response cars. The supervisor or on-scene incident commander shall establish a field command post with a designated staging area. The incident commander shall designate officers for security details for police vehicles and equipment.

The incident commander may activate the Emergency Response Unit (ERU) in order to provide additional demonstration management resources, or to deploy chemical/less lethal munitions as necessary and in accordance with MPD policies for its use. Upon activation, the ERU will be deployed/directed by the ERU commander in consultation with the incident commander.

The incident commander shall be in charge of the incident as a whole, however, the ERU commander shall direct the specific actions of ERU members once they have been activated, consistent with the mission outlined by the incident commander.

### 7-806 CANINE (K9) UNIT

(A)

The Canine Unit will be available on a 24 hour basis. K9 personnel will perform regular police duties between calls for assistance from other officers.

Requests for canine assistance shall be made by officers in charge of a scene via MECC. The situation shall be explained to the canine officer and area secured of all personnel to preserve evidence and scent.

Requests for canine assistance by outside agencies will be referred to an on duty canine supervisor or senior canine officer in the canine supervisor is not available. The agencies will be advised of Department policies and procedures, and that there is a fee for canine use outside Hennepin County and St. Paul. The canine officer will make a written report of the incident. (05/21/96)

### 7-807 AUTHORIZED USE OF CANINES

(A-B)

The following situations are authorized for use of Minneapolis Police Department canines and personnel:

- To protect officers and others from injury.

- To effect the arrest or prevent the escape of anyone who has or is believed to have committed a gross misdemeanor or felony when other means are unsuccessful or dangerous. The use of the canine may be considered the use of force in this situation and should be treated accordingly. (05/21/96)

- For tracking or searching for people, explosives, evidence or contraband.

- To assist in controlling a disturbance with approval from a Bureau Head or the Watch Commander. Canines shall not be used for general crowd control or at passive demonstrations.

- For security of police and city equipment and property.

- For use at public relations demonstrations. Demonstrations in Minneapolis and those outside of Minneapolis need the approval of the canine supervisor. (05/21//96)

### 7-808 INJURED CANINE HANDLER

(A)

If a handler is injured and unable to call the dog, the officers should follow the following procedure:

- After requesting medical assistance and securing the scene, attempt to call the dog into the rear of an open squad.

- If the above has failed, notify another canine officer. Officers who have been canine officers may also be able to help. As a last resort, contact a member of the officer's family that is familiar with the dog.

### 7-809 CRISIS INTERVENTION TEAM (06/22/01) (12/28/06) (11/06/07)

The Crisis Intervention Team (CIT) is comprised of volunteer officers from each of the precincts and other duty assignments. It is the policy of the Minneapolis Police Department to handle incidents involving mentally ill persons and those in crisis, with care and expertise, ensuring that such persons receive appropriate responses based on their needs.

Whenever possible, a CIT Officer will be dispatched to provide direction and be the primary contact during police response to incidents involving persons in crisis or who are believed to be mentally ill. Minneapolis Emergency Communications Center (MECC) will dispatch the necessary patrol squads and the nearest available CIT squad for all police calls for service involving persons in crisis or mentally ill individuals.

Officers at a scene shall evaluate the situation, and based upon the information and circumstances known at that time, determine if the situation warrants a CIT squad. If a CIT Officer is requested to assist, or is initially dispatched by MECC, on arrival, the CIT Officer(s) shall have and maintain on-scene responsibility unless otherwise directed by a supervisor. CIT Officers will respond from their normal work assignments.

CIT Officers shall:

- be trained to recognize whether a person is mentally ill or developmentally disabled;

- be trained in the area of less lethal weapons and de-escalation techniques;

- attend training as required by the MPD Training Unit.

### 7-809.01 CRISIS INTERVENTION TEAM (CIT) DATA COLLECTION FORM

(A-D) **(03/20/07)**

Any sworn MPD employee handling a call, where the nature was Crisis Intervention Team (CIT), shall complete the CIT data collection form. The CIT data collection form will not replace the offense report. (07/11/07)

CIT data collection forms are available online under forms. Forms may be completed online, saved as a document and then emailed as an attachment to the CIT Coordinator. Forms completed by hand should be sent through inter-office mail to the CIT Coordinator.

Questions regarding the CIT data collection form should be directed to the CIT Coordinator.

### 7-810 CRITICAL INCIDENT POLICY *PURPOSE* (9/21/07)

*PURPOSE:*

The MPD and its employees understand that the performance of law enforcement duties is inherently demanding and that certain situations create a significant risk of physical and emotional harm to the officer. It is therefore important to the department to develop standards and procedures for responding to Critical Incidents that ensure the safety and well-being of its employees and that provide a means by which employees may seek assistance in dealing with the effects of critical/traumatic events. This policy shall be administered in a manner that is consistent

with the department's desire to treat affected employees with dignity and respect under such circumstances and to provide information and assistance to them concerning their involvement in critical/traumatic events, their recovery, and their return to duty.

The department also recognizes that having established standards and procedures for responding to Critical Incidents is necessary to facilitate the prosecution of suspects, and to give the public a sense of safety and to promote public confidence in the department's response to Critical Incidents.

It is the purpose of this policy to establish investigative and administrative procedures that ensure the safety and well-being of officers while promoting public safety and confidence at Critical Incidents.

### 7-810.01 CRITICAL INCIDENT POLICY *DEFINITIONS* (09/21/07)

The following terms as used in this policy shall have the following meanings:

*Critical Incident:*

- The use of Deadly Force by or against a Minneapolis Police Officer

- Death or Great Bodily Harm to an officer

- Death or Great Bodily Harm to a person who is in the custody or control of an officer

- Any action by an officer that causes or is intended to cause Death or Great Bodily Harm

*Great bodily harm:*

Investigation:

*Administrative Investigating Entity:*

*Chief's Proxy:*

*Criminal Investigating Entity:*

*Investigators:*

*Lead Investigator:*

*Headquarters- Investigative:*

*Headquarters-Involved Officer's Room:*

*Mental Health Professional (MHP):*

Officers:

*Escort:*

*Incident Commander:*

*Involved Officer:*

*Witness Officer:*

Reports and Statements:

*CAPRS Report:*

*Public Safety Statement*

*Voluntary Statement*

### 7-810.02 CRITICAL INCIDENT POLICY *ON-SCENE PROCEDURES* (09/21/07)

**Notification of a Critical Incident:** As soon as a Critical Incident occurs, a Witness or Involved Officer shall immediately notify his/her supervisor and the MECC dispatcher that a Critical Incident has occurred. MECC shall immediately send out a text message pursuant to MECC protocol and notify the Watch Commander.

**Incident Commander's Duties:**

- Announce on-air that they are the Incident Commander

- Make sure the scene is safe

- Render first aid if necessary

- Set up crime scene boundaries and keep the crime scene secure

- Determine the identity of Involved Officers

- Determine the identity of Witness Officers

- Take a Public Safety Statement from Involved Officers

- Assign Escort Officers to Involved and Witness Officers

- Keep the Involved and Witness Officers separated from each other

- Identify civilian witnesses and keep them separate from each other

- Designate an officer to complete the CAPRS report

- Protect the quality and integrity of video images by ensuring MVR videotapes are not played/reviewed in squad cars prior to collection by Crime Lab Unit personnel. (04/03/09)

- Remain on the scene to meet with and brief Investigators upon their arrival at the scene. Identify all Involved Officers, Witness Officers, other witnesses, and other known evidence at the scene for the Investigators.

**Public Safety Statements:** The Incident Commander shall ask the Involved Officers a limited number of questions to ensure the safety of the general public. These questions must be narrowly focused and restricted to:

1) Getting the direction of fire to locate anyone who may be injured.

2) Determining the location of any known firearms or dangerous weapons.

3) Determining if there are any outstanding suspects, their description, direction of travel, vehicle, weapons they possess and crimes they have committed.

**Note:** Due to the immediate need to take action, the officer does not have the right to wait for representation before answering the limited Public Safety questions.

**Scene Investigation:** MPD Homicide Unit Investigators and Internal Affairs Unit Investigators shall have equal access to the scene and should jointly view the scene and any evidence at the scene. MPD Crime Lab personnel shall collect identified evidence at the direction of CID and IAU investigators, including MVR videotapes from all squads

at the Critical Incident scene. All Investigators in the crime scene shall complete a CAPRS statement. (04/03/09) (04/21/09)

### 7-810.03 CRITICAL INCIDENT POLICY *PROCEDURES FOR INVOLVED AND WITNESS OFFICERS* (09/21/07)

**Supporting Officers following a Critical Incident:** Officers involved in Critical Incidents, whether Witness or Involved Officers, can be profoundly affected by the incident. How a Witness or Involved Officer is treated during the time following a critical incident can minimize or aggravate the psychological effect on them. Therefore, first and foremost, anyone dealing with a Witness or Involved Officer should keep in mind the following guiding principles at all times:

- Be sensitive to individual officer needs. Physical contact with the officer must be evaluated on an individual basis. Often officers feel overwhelmed by all of the people wanting to console them. Before attempting to speak with an officer, please ask the

- Escort attending to the officer to inquire if he or she would like to meet with you. If the officer declines to meet with any particular person, please honor his/her decision.

- Because Witness or Involved Officers can be profoundly affected by Critical Incidents, they should not be left alone or ignored.

- Avoid making the officers feel like a suspect.

The following procedures shall apply to managing Witness and Involved Officers following a Critical Incident:

### *Involved Officers*

**At the scene:**

- The MPD Incident Commander shall determine which officers are Involved Officers. The Incident Commander at the scene shall promptly assign an Escort to stay with each Involved Officer until relieved by a Homicide Investigator. One Escort shall be assigned for each Involved Officer. Whenever possible, Escorts assigned to Involved Officers shall be of the rank sergeant or above and shall not be the Incident Commander. (04/21/09)

- Involved Officers shall not talk to anyone at the scene about the incident, except to the Incident Commander, Lead Investigator, a Federation representative and/or legal counsel and to provide a Public Safety Statement to the Incident Commander to enable the primary responders and Investigators to secure the scene, facilitate the investigation, apprehend suspects, and allow for officer or civilian safety at the scene.

- The Involved Officers shall not be unreasonably denied access to a Federation representative or legal counsel at the scene.

- As soon as practical, the Escorts shall take the Involved Officers from the scene to the designated drug and alcohol testing collection site, as determined by the Incident Commander per MPD Policy and Procedure Section 3-1003, Employee Drug and Alcohol Test Procedure: Supervisor Responsibility. After test samples are obtained, the Escorts shall transport the Involved Officers to Headquarters-Involved Officer's Room. Escorts shall keep the Involved Officers separate from other Involved and Witness Officers. (04/21/09)

- Unless a supervisor has a reason to believe that the officer may pose a threat to himself/herself or to others, or unless directed by the Investigators, the Involved Officers' firearm should not be taken at the scene.

- Involved Officers should not be placed in the back seat of a police vehicle.

**At Headquarters-Involved Officer's Room:**

- If Involved Officers request, they shall not be unreasonably denied access to:

> § Food and drink
>
> § Restroom facilities
>
> § Telephone to contact loved ones
>
> § A representative from the Federation or other legal counsel
>
> § A representative from the Police Assistance Program or the responding peer support team member
>
> § The Police Chaplain or other clergy

- If requested by Investigators, Involved Officers shall make themselves available for a firearms inspection and shall surrender his/her firearm and any other requested equipment to them. Homicide Investigators will take custody of the Involved Officer's firearm, place it in a paper bag, and put it in the evidence locker in Investigative Headquarters if Crime Lab personnel are unavailable to take immediate custody of the weapon. The evidence locker will be locked immediately after the firearms are placed inside. Crime Lab personnel will remove the officer's handgun from the locker and process per SOP.

- Involved Officers shall be provided with replacement firearms and equipment as soon as reasonably possible.

- Involved Officers shall be allowed a reasonable opportunity to consult with Federation representatives, legal counsel, Police Chaplin, and Police Assistance Program personnel. After meeting with counsel, Involved Officers who so request shall be given an opportunity to meet with an Assistant City Attorney, if appropriate, and shall be given reasonable time to do so.

- After consultation with legal counsel, the Involved Officers or legal counsel will inform the Lead Investigator or designee if the Involved Officers are willing to give a Voluntary Statement. Voluntary Statements should be given as soon as possible, but in all cases within 48 hours of the Critical Incident to ensure the continuity of the investigation unless the involved officer is not able to do so. Involved Officers statements shall be given at Investigative Headquarters or such other location chosen by the Lead Investigator. All statements from involved officers will be taken in question and answer (Q&A) format.

- If MVR videotapes pertaining to the Critical Incident were collected and the Involved Officer(s) wishes to review the video, the Lead Investigator will provide an opportunity to do so prior to giving a statement. (04/21/09)

### *After Incident Care*

**Administrative Leave:** Involved Officers shall be placed on a mandatory paid administrative leave for a minimum of three calendar days and a maximum of seven calendar days following the Critical Incident unless otherwise requested by the officer and approved by the Chief or his/her designee.

An officer shall not work a uniformed off-duty job or buyback while on Administrative Leave. An officer may work an approved non-uniform, non law-enforcement off-duty job while on a "pending investigation" administrative leave at the sole discretion of the Chief or his/her designee.

**Peer Debriefing:** All Involved Officers may take part in a group peer debriefing facilitated by the Police Assistance Program or other Mental Health Professional and after care as necessary.

**Psychological Debriefing:** All Involved Officers shall be required to meet with a Mental Health Professional selected by the officer from the approved list. Such meeting or meetings shall be considered on-duty time, and the City shall pay the fees of the Mental Health Professional as stated in the Collective Bargaining Agreement. If, after consultation, the Mental Health Professional renders an opinion that the Involved Officer is not yet fit for duty, the Involved Officer shall be placed on Injured on Duty ("IOD") status, pursuant to Minneapolis Civil Service Rule 15.19(A). If the Mental Health Professional determines that the officer is not able to return to work in any capacity

after the officer has exhausted IOD benefits, he/she may continue to be eligible for paid time off pursuant to Minn. Stat. §299A.411 and/or applicable provisions of the Labor Agreement and other Civil Service Rules. Any disputes concerning the officer's ability to return to work shall be resolved in accordance with the Collective Bargaining Agreement.

A return to duty determination and documentation will be presented to the Chief of Police by the Mental Health Professional prior to the Involved Officer being returned to duty.

### *Witness Officers*

**At the scene:**

- The Incident Commander shall determine which officers are Witness Officers. As soon as possible, the Incident Commander shall assign an Escort to each Witness Officer. If possible, one Escort shall be assigned to each Witness Officer. Witness Officers shall be separated from each other and other witnesses and shall not talk to anyone at the scene about the incident other than the Incident Commander, Lead Investigator, a Federation representative and/or legal counsel and to provide details to enable the primary responders and Investigators to secure the scene, facilitate the investigation, apprehend suspects, and allow for officer or civilian safety at the scene.

- The Witness Officers shall be allowed a reasonable opportunity to consult with a Federation representative or legal counsel at the scene. To ensure that all evidence and witnesses are located and preserved, Witness Officers should voluntarily meet at the scene with the Lead Investigator to give them a brief overview of the incident, identify evidence and provide other information deemed necessary to ensure the continuity of the investigation. The Lead Investigator will prioritize the order and urgency of Witness Officer interviews, and will communicate the priorities to the Incident Commander and any Federation representative who is present or accessible.

- As soon as practical, Witness Officers will be released from the scene by the Lead Investigator and advised to proceed to Investigative Headquarters. The Lead Investigator will inform the Incident Commander of any officers released from the scene. Witness Officers shall be advised that they are to wait at Investigative Headquarters for an opportunity to meet with legal counsel, the Police Chaplin or Police Assistance Program Personnel.

**Investigative Headquarters:**

- Witness Officers shall be afforded an opportunity to meet with the Police Chaplin, the responding Police Assistance Program representative and to consult with legal counsel and/or Federation representatives. After meeting with counsel, Witness Officers, who so request, shall be given an opportunity to meet with an Assistant City Attorney, if appropriate, and shall be given reasonable time to do so.

- After such consultations, statements from Witness Officers are to be taken by Homicide Investigators prior to the officers being released from duty unless otherwise directed by Homicide investigators. All statements by Witness Officers will be taken in a question and answer (Q & A) format. If MVR videotapes pertaining to the Critical Incident were collected and the Witness Officer(s) wishes to review the video, the Lead Investigator will provide an opportunity to do so prior to giving a statement. (04/21/09)

- If requested by Investigators, Witness Officers shall make themselves available for a firearms inspection and shall surrender his/her firearm and any other requested equipment to them. Homicide Investigators will take custody of the Witness Officer's firearm, place it in a paper bag, and put it in the evidence locker in Investigative Headquarters if Crime Lab personnel are unavailable to take immediate custody of the weapon. The evidence locker will be locked immediately after the firearms are placed inside. Crime Lab Personnel will remove the officer's handgun from the locker and process per SOP.

- Witness Officers shall be provided with replacement firearms and equipment as soon as reasonably possible.

### *After Incident Care*

**Administrative Leave:** A Witness Officer may request to be placed on paid administrative leave for up to three calendar days following the Critical Incident. The decision to grant the request shall be made at the sole discretion of the Chief or his/her designee. The decision on whether to grant paid administrative leave shall be promptly communicated to the Witness Officer by his/her commander or the commander's designee.

If an officer is granted a paid leave, he/she shall not work a uniformed off-duty job or Buy Back while on Administrative Leave. An officer may work an approved non-uniform, non law-enforcement off-duty job while on a "pending investigation" administrative leave at the sole discretion of the Chief or his/her designee.

**Peer Debriefing:** All Witness Officers shall take part in a group peer debriefing facilitated by the Department's PAP representative or other designated Mental Health Professional and shall take part in any after-care, if appropriate.

**Psychological Debriefing:** Witness officers granted a paid leave shall be required to meet with a Mental Health Professional selected by the officer from the approved list. Witness officers not on a paid leave shall be encouraged and allowed to meet with the Mental Health Professional selected by the officer from the approved list. Such meeting or meetings shall be considered on-duty time, and the City shall pay the fees of the Mental Health Professional pursuant to the Collective Bargaining Agreement.

If, after consultation, the Mental Health Professional renders an opinion that the Witness Officer is not yet fit for duty, the Witness Officer shall be placed on Injured on Duty ("IOD") status, pursuant to Minneapolis Civil Service Rule 15.19(A). If the Mental Health Professional determines that the officer is not able to return to work in any capacity after the officer has exhausted IOD benefits, he/she may continue to be eligible for paid time off pursuant to applicable provisions of the Labor Agreement and other Civil Service Rules. Any disputes concerning the Officer's ability to return to work shall be resolved in accordance with the Collective Bargaining Agreement.

After consultation, a return to duty determination and documentation will be presented to the Chief of Police by the Mental Health Professional. In the case of a Witness Officer on paid administrative leave, their fitness for duty determination and documentation will be presented to the Chief of Police prior to being returned to duty.

### 7-810.04 CRITICAL INCIDENT POLICY *CONSULTATION WITH LEGAL COUNSEL* (09/21/07)

Involved and Witness Officers are entitled to consult with their legal counsel during the pendency of the Critical Incident investigation, up to and including any grand jury proceedings. Such reasonable and necessary meeting or meetings shall be considered on-duty time and the fees of the legal counsel may be eligible to be paid by the City pursuant Chapter 466 of the Minnesota State Statutes and the City's legal fees policy. Officers shall be personally responsible for payment of any legal fees that exceed the hourly rate provided for in the City's legal fees policy.

### City Attorney

It is common for Critical Incidents to result in civil lawsuits being filed against the City and the officers. Pursuant to the Citys adopted defense and indemnity policy, the Minneapolis City Attorneys office, as the legal counsel for the City of Minneapolis, defends the City and *its employees* in such suits. Therefore, it is very important in order to properly prepare to defend any potential lawsuit following a Critical Incident that the City Attorney's office be able to fully investigate the Critical Incident as soon as possible. For that reason, both Witness and Involved Officers shall be required to meet with and otherwise cooperate with the Civil Division of the City Attorney's office when appropriate in its investigation and subsequent defense of any case that may arise.

### 7-810.05 CRITICAL INCIDENT POLICY *INTERNAL AFFAIRS* (09/21/07)

The Internal Affairs Unit shall be responsible for conducting an Administrative Investigation of all Critical Incidents and will investigate the Critical Incident simultaneously with Homicide Investigators. The IAU Commander or his/her designee will be the Chief's Proxy on scene. (04/21/09)

**Scene Access:** MPD Homicide Investigators and Internal Affairs Unit Investigators have equal access to the scene, evidence, civilian witnesses and all investigative data obtained at the scene. (04/21/09)

**Suspect and Witness Interviews:** Homicide Investigators shall ensure that all suspect and critical witness interviews are done in the monitored and recorded interview rooms at Investigative Headquarters. IAU will be notified of the interviews and may observe the interviews from the monitors in Investigative Headquarters. (04/21/09)

**Investigative Data and Additional Evidence:** Homicide Investigators shall notify in a timely manner and provide investigative data to IAU Investigators from sources not on scene, investigative reports or additional evidence as the investigation proceeds. IAU will have full access to all investigative records, statements and evidence that is collected during the criminal investigation. Evidence collected during any Critical Incident shall not be released without IAU approval. (04/21/09)

Last updated Sep. 27, 2011

©1997-2013 City of Minneapolis, MN