CASE 0:11-cv-03071-SRN-JJK   Doc. 84-43   Filed 03/08/13   Page 1 of 9

**City of Minneapolis**

# 9-100 Adult Arrests

**9-101 FELONY ARRESTS – ADULTS (05/29/02)**

(A-B)

All probable cause adult felony arrests must be authorized at the scene of arrest whenever possible. In the event the supervisor is unable to respond to the scene of the arrest, authorization may be given by radio, telephone or MDT/MDC. The probable cause felony arrest may be authorized by:

- The arresting officer's supervisor, or

- An investigator from the concerned investigative unit/division, or

- Any other supervisor

Supervisors will add their remarks via MDT/MDC to indicate their approval of probable cause and also whether they made the approval at the scene or via radio/telephone or MDT/MDC.

Arrests made on the basis of warrants or PC pickups do not require supervisor's approval.

Prior to transporting arrestees to Hennepin County Adult Detention Center (HCADC), officers should consider a debriefing session. Arrestees shall be taken to HCADC for processing unless requested to be transported to the concerned investigative unit.

The Authority to Detain form (HC 6377) shall be completed. The approving supervisor's name and badge number must be listed in the remarks section of the Authority To Detain form. The name of the supervisor approving the arrest and continued detention of the suspect must be included in the narrative section of the CAPRS report.

The original will be left at the HCADC and the carbon copy shall be given to the Police Typist to accompany the CAPRS report. The 36-Hour Expiration Advisory (HC 6400) shall be completed. In order to comply with the Supreme Court imposed 48-Hour Rule, officers shall note the exact time of arrest. The time of arrest is not when the suspect was booked or when the reports were made. The original 36-Hour Expiration Advisory shall be left at HCADC and the carbon copy will be forwarded with the case to the appropriate investigative unit.

Arrests for criminal sexual conduct (CSC), including PC Pick-ups, require an officer to complete a Criminal Sexual Assault Victim Notification form (HC 6170).

**9-101.01 FELONY AND GROSS MISDEMEANOR ARREST REPORT REQUIREMENTS PUBLIC INFORMATION - JUDICIAL PROBABLE CAUSE (05/29/02)**

(A-B)

For felony and gross misdemeanor arrests, the following guidelines apply:

In Supplement Zero (0) of the CAPRS data entry screen, a pre-written prompt entitled "Public Information" appears. Following this prompt, officers are to briefly detail an incident/arrest. No names, addresses or any other information that would identify a victim or witness shall be entered in this section of the report.

The next prompt is the Judicial Probable Cause Oath statement. Following this prompt, officers shall write approximately one to two paragraphs detailing the probable cause for the arrest.

Supplement One (1) of the CAPRS report shall describe the entire incident in detail.

EXHIBIT
tabbies
43

CASE 0:11-cv-03071-SRN-JJK   Doc. 84-43   Filed 03/08/13   Page 2 of 9

In cases of an arrest based on a PC arrest bulletin (PC Pick-up), officers shall attach a PC Pick-up to the CAPRS report. Copies of the PC Pick-up may be obtained from the Transcription Unit's file or MPD Net.

After administering a written or oral oath, peace officers can sign a written report of another officer for the purpose of providing probable cause for the underlying arrest.

Officers shall swear to and sign their Judicial Probable Cause statement in front of an MPD notary. Peace Officers can sign a Probable Cause statement written by another officer for the purpose of providing probable cause for arrest.

MPD notaries shall witness the swearing and signing, and after such fact, shall sign the statement with their signature, license number, and the date their license expires.

The senior officer making the arrest is responsible for making sure all Probable Cause statements are notarized.

Transcription Unit staff shall distribute the signed and sworn statements to the Criminal History Unit during weekend and holiday hours and to the investigative units during normal work hours.

Criminal History staff shall fill out the court form and attach it to the arrest report.

This policy also applies to felony arrests of juveniles and to gross misdemeanor arrests.

## 9-102 GROSS MISDEMEANOR ARRESTS – ADULTS (05/29/02)

(A-B)

Supervisor approval is not needed for gross misdemeanor arrests. All other felony arrest procedures apply to gross misdemeanor arrests.

## 9-103 MISDEMEANOR ARRESTS – ADULTS (05/29/02) (09/16/04)

(A-B)

Adult misdemeanor violators shall be issued citations in lieu of arrest *unless* the officer believes that one of the following circumstances exists:

- To prevent bodily harm to the accused or another.

- To prevent further criminal conduct.

- There is a substantial likelihood that the accused will fail to respond to a citation.

- The officer cannot verify the identity of the accused.

- The officer has found that the accused has an outstanding warrant.

The officer must be able to articulate to the court *and in the CAPRS arrest report the reason(s) why it was necessary to arrest a person rather than issuing a citation.*

## 9-104 ARRESTS FOR DRIVING WHILE INTOXICATED (DWI) (05/29/02)

(A-B)

When suspects are arrested for DWI, they shall be taken to the Chemical Testing office, Room 19, for testing and video taping procedures. Suspects may be released after testing and issued a citation if they meet the conditions for issuing a citation in lieu of arrest.

## 9-104.01 ARRESTS FOR CRIMES OF VIOLENCE (05/29/02)

(A)

Minn. Stat. §629.72 requires that victims of crimes of violence be notified of an arrested person's release. Domestic assault victims must also be notified of other relevant case information.

In order to comply with these laws, officers shall complete a Crime of Violence/Attempt Crime of Violence Information Form (HC 6194). This form shall be left at HCADC when the suspect is booked.

When a juvenile is booked at the Juvenile Detention Center for a crime of violence, a Victim Information Form must be completed. The forms are available at the Juvenile Detention Center.

## 9-105 ARREST REPORTS/ADULT DETENTION CENTER (05/29/02)

(A)

MPD is required to provide HCADC with a copy of the arrest report. Arrest reports are automatically routed to HCADC via the CAPRS system.

In the event that the CAPRS system is down, arrest reports shall be entered off-line and printed. Officers shall deliver a photocopy of the arrest report to HCADC.

## 9-106 CITATIONS IN LIEU OF ARREST AND ARREST REPORTS (05/29/02) (03/17/03)

(A)

A CAPRS report must be completed when a citation is issued for the following:

- A non-traffic offense;

- A traffic offense charged in connection with an accident;

- Any citizen's arrest;

- Driving after Revocation (DAR);

- Driving after Suspension (DAS);

- Driving after Cancellation (DAC);

- On charges of DWI, Careless Driving, Reckless Driving or any violation of the Open Bottle law.

NOTE: See Volume 8 for procedures for handling Juvenile traffic, criminal and status offenses.

## 9-107 CITIZEN'S ARRESTS (05/29/02)

(A-B)

Citizen arrests for misdemeanor crimes can only be made when the crime was committed in the complainant's presence.

Citizens making arrests must complete a Citizen's Arrest Form (MP-3406). Security personnel from businesses that make arrests on a regular basis may be allowed to use the standard CAPRS offense report instead of the Citizen's Arrest form.

Officers shall determine whether the circumstances justify taking the accused into custody. If officers feel that the arrest is illegal, the officer shall refer the complainant to the City Attorney's Office.

If the accused is to be taken into custody, officers shall verify the identity of the complainant and assist in completing the Citizen's Arrest Report. Complainants should be advised that the City Attorney will notify them if a formal complaint is needed.

Note: See Manual Section for Citizen's Arrest - Traffic Violation.

## 9-108 ARREST OR DETENTION OF INJURED ADULTS (05/29/02) (05/19/08)

(A-B)

All adult arrestees needing minor medical attention shall be transported to Hennepin County Medical Center (HCMC) or to a local hospital for medical evaluation and treatment. Arrested felons who have a high probability of requiring hospitalization, including those with known or suspected drug ingestion, shall be brought to HCMC whenever possible. Hospital personnel or hospital security will not hold or guard an arrestee. Officers are responsible for the custody of their arrestees while receiving medical attention.

If an injured misdemeanor arrestee is delayed at the hospital longer than the arresting officers are able to wait, after giving some consideration to the nature of the offense, officers shall issue a citation in lieu of arrest and complete a CAPRS report.

Officers shall retain custody of arrested felons needing medical attention until they can be transported to HCJ. In the case of felony arrestees admitted to the hospital, the arresting officers shall notify their on-duty supervisor, who shall then contact the on-duty jail supervisor to arrange for relief. Officers assigned to the precinct where the arrest was made shall have custodial responsibility until properly relieved by the Hennepin County Sheriff's Office (HCSO).

Note: HCSO's contract is with HCMC, so they prefer to take custody of arrestees at HCMC.

## 9-109 HANDCUFFING ARRESTEES/DETAINEES (05/29/02)

(A-B)

All detainees/arrestees shall be handcuffed behind the back, unless a physical condition or other circumstances including sickness, injury or disability, does not allow for it. Handcuffs should also be double locked as soon as possible. Prisoners being transported to HCADC shall be handcuffed. Prisoners shall be handcuffed whenever taken outside the confines of the jail, except when handcuffing would deter the completion of an investigation.

Plastic handcuffs may be used to supplement standard handcuffs in emergency situations. They may also be used in mass arrest situations and are available in all sergeants' vehicles. Plastic handcuffs should not be used in felony arrests or for restraining mentally ill individuals.

## 9-110 PRISONER CONTROL, SAFETY AND TRANSPORTATION (05/29/02)

(A-B)

When feasible, a two-officer squad shall be used to transport a felony prisoner.

One-officer squads may transport misdemeanor prisoners.

All prisoners shall remain within sight of the transporting officers at all times until the custody of the prisoner is transferred to a responsible authority except in emergency situations. Transporting officers shall not stop or interrupt prisoner transport responsibilities unless exigent circumstances exist and the risk to the prisoner is minimal.

Transporting officers are responsible for ensuring the safety of their prisoners.

In the event of a prisoner escape during transport, the transporting officers shall immediately do the following:

- Notify the dispatcher of the event and location.

- Attempt pursuit if possible.

- Notify a supervisor or proper jurisdictional authority of the escape.

- Complete the original arrest report, noting the escape from custody.

When transporting prisoners to a detention facility, officers shall MPD rules, regulations and requirements until the prisoner is secure within the destination facility. Officers will then comply with the rules, regulations and procedures of the receiving facility.

## 9-111 TRANSPORTATION OF PRISONERS OF THE OPPOSITE SEX (05/29/02)

(A-B)

When feasible, a two-officer squad shall transport an arrestee of the opposite sex.

Officers transporting an arrestee of the opposite sex shall give MECC their destination and odometer reading. Upon arrival, they shall notify MECC. MECC shall also be immediately notified of any delay.

## 9-111.01 MAXIMAL RESTRAINT OF PRISONERS (05/29/02)

(B-C)

To secure subjects who are not adequately controlled by handcuffing, officers may use techniques that restrain the legs/feet as well as hands. These techniques shall only be used in situations where handcuffed subjects are combative and still pose a threat to themselves, officers, or could cause significant damage to property if not properly restrained.

The Maximal Restraint Technique (MRT) is accomplished by placing a cord cuff (or hobble restraint) around the waist of the subject and securing the bound feet of the subject to the cord cuff in front of the subject. Officers may also secure the bound feet of the subject to the subjects belt if they are wearing one or use other variations that **do not** tie the feet of the subject directly to their hands behind their back.

Techniques that secure the subjects feet to their handcuffed hands behind the back shall be a last resort technique. A supervisor shall be called to the scene where a subject has been restrained in this manner to evaluate the method of transportation. When **ANY** restraint technique is used on a subject, the subject shall not be left in a prone position and shall be placed on their side as soon as they are secured. Once the subject is secured, an officer shall watch for any of the following signs:

- Significant change in behavior or level consciousness;

- Shortness of breath or irregular breathing;

- Seizures or convulsions;

- Complaints of serious pain or injury; and/or

- Any other serious medical problem.

In the event any of the above conditions arise prior to transport, officers will notify paramedics and request a medical evaluation of the subject. If any of these conditions arise while transporting, officers shall either call paramedics or transport the subject to the hospital immediately. If paramedics transport the subject, and the subject is the officer's prisoner, an officer shall ride with the paramedics to the hospital. If officers transport, a two-officer

squad shall transport the restrained subject seated upright, unless it is necessary to transport them on their side. Under no circumstances, shall a restrained subject be transported in the prone position. An officer shall monitor the medical condition of the subject from the time the restraint is applied, through the time the officer is relieved of custody. Officers shall also inform the person who takes custody of the subject that a restraint was used and how it was applied.

## 9-112 LEGISLATIVE IMMUNITY (05/29/02)

(A)

Officers shall observe legislators' privilege from arrest as set forth in the State of Minnesota Constitution, Article IV, Section 10:

"The members of each house shall in all cases, except treason, felony, and breach of the peace be privileged from arrest during the session of their respective houses, and in going to or returning from the same."

## 9-113 DIPLOMATIC AND CONSULAR IMMUNITY (05/29/02)

(A)

Under international and federal law, diplomatic and consular officials are granted varying degrees of immunity and personal inviolability (i.e. freedom from arrest, detention, search etc.) depending on the position they hold. However, the privilege of personal inviolability must be balanced with the responsibility of the United States and its government bodies to protect the safety of its citizens. Police authorities may intervene to the extent necessary to halt activity that poses imminent danger to the safety of the public or when it is apparent that a serious crime may otherwise be committed.

1. Diplomatic agents, family members recognized as part of their household, and members of their administrative and technical staff and their households enjoy full immunity from arrest, detention, criminal prosecution, and search of their person, property or residence.

Members of their service staff have no privileges or immunities except for immunity from prosecution for acts related to performance of their official duties. Family members of the service staff have no privileges or immunity.

Family members of diplomatic agents who are also U.S. citizens have no privileges or immunities. Staff members or their families who are U.S. citizens or permanent residents of the U.S. have no privileges or immunities.

2. Consular officials, their families and staffs have no privileges or immunity related to arrest, detention, or search and seizure. The only exception is that career consular officers enjoy immunity from arrest unless the arrest is pursuant to a felony warrant.

The only authoritative document that can reliably identify a diplomatic or consular official is the identity card issued by the Department of State, Protocol Office. Other documents such as foreign diplomatic passports, U.S. diplomatic visas, tax exemption cards, or vehicle registration issued by the State Department do not conclusively indicate the diplomatic status of an individual. Officers presented with this type of identification should assume that the suspect might have some degree of immunity and attempt to verify further the diplomatic status of the suspect.

The on-duty Watch Commander must be notified of any incidents involving diplomats or consular officials. These incidents must still be fully documented on the CAPRS reports. The federal government, acting through the State Department may be able to take corrective action against foreign diplomats who violate U.S. criminal law.

## 9-114 ARREST AND/OR DETENTION OF FOREIGN NATIONALS (05/29/02)

(A)

It is the obligation of the United States, including local municipalities, to notify foreign authorities when foreign nationals are arrested or otherwise detained.

If a foreign national is arrested or detained, the following must be done:

1. Immediately inform the foreign national of his/her right to have his/her government notified concerning the arrest or detention.

2. If the foreign national asks that such notification be made, do so without delay by informing the consulate or embassy.

3. In the case of certain countries, such notification must be made without delay regardless of whether the arrestee/detainee so wishes. The Operations Development Unit and MECC have a copy of the Foreign Consular Offices in the United States that contains all pertinent phone numbers for Consular/Embassy offices. These are:

- Algeria
- Antigua and Barbuda
- Armenia
- Azerbaijan
- Bahamas
- Barbados
- Belarus
- Belize
- Brunei
- Bulgaria
- China
- Cost Rica
- Cyprus
- Czech Republic
- Dominica
- Fiji
- Gambria
- George
- Ghana
- Grenada
- Guyana
- Hong Kong
- Hungary

- Jamaica
- Kazakhstan
- Kiribati
- Kuwait
- Kyrgyzstan
- Malaysia
- Malta
- Mauritius
- Moldova
- Mongolia
- Nigeria
- Philippines
- Poland (only non-permanent residents)
- Romania
- Russian Federation
- St. Kitts/Nevis
- St. Lucia
- St. Vincent/Grenadines
- Seychelles
- Sierra Leone
- Singapore
- Slovakia
- Tajikistan
- Tanzania
- Tonga
- Trinidad/Tobago
- Tunisia
- Turkmenistan
- Tuvalu

- Ukraine

- United Kingdom

- Uzbekistan

- Zambia

- Zimbabwe

Foreign consular officials have the right to visit their arrested/detained nationals unless the arrestee/detainee objects to such visits.

## 9-115 POLICE AUTHORITY IN IMMIGRATION MATTERS (05/29/02)

(A)

The United States Code empowers the U.S. Citizen and Immigration Services (USCIS) and Immigration and Customs Enforcement (ICE), Department of Homeland Security, as the sole authority in immigration matters. This means that state and local law enforcement agencies have no authority with respect to immigration violations. The only exception for permissible direct enforcement action by officers is narrowly specified under the Title 8, U.S.C. 1324 which concerns smuggling, transportation, or harboring certain illegal aliens. The officer must first be able to articulate closely the prescribed provisions of Title 8, U.S.C. 1324 and then immediately notify the USCIS to verify alien status. Thereafter, the case will be turned over to the USCIS.

Officers shall not independently undertake to approach, interview, interrogate, detain or arrest any suspected illegal alien or refugee when potential violation of the federal immigration law is the principal issue. Neither shall any officer independently seek to ascertain a suspected illegal alien's status aside from the following condition:

- An officer reasonably suspecting his/her arrestee (for a non-immigration offense) to be an illegal alien, may notify the USCIS. The USCIS may then elect to interview, verify, and place a detainer hold upon the MPD's arrestee for later disposition.

In accordance with the MPD policy of Report Writing, officers will take reports for missing, lost, or stolen identification cards for foreign nationals. If possible, validate the reporting party's identification by checking some other form of identification. The country of issuance should be documented in the report. A CCN number is generally required by the foreign consulate to issue a replacement identification card. (10/20/05)

## 9-116 FEDERAL PRISONERS - INCLUDING AWOLS (05/29/02)

(A)

For the purposes of this section, AWOL is Absent Without Leave from Military Service.

If an officer has a prisoner that they believe has a federal warrant, the officer shall confirm the warrant with Channel 7. The prisoner shall be transported to the Hennepin County Adult Detention Center where the prisoner will be received into custody per Minn. Stat. §641.03.

Last updated Sep. 27, 2011

©1997-2013 City of Minneapolis, MN